**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**ONYA WHITNER,**

Plaintiff,

v.

**BALTIMORE SYMPHONY ORCHESTRA, INC.,**

Defendant.

Civil Action No. _______________

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Onya Whitner, by and through her attorney, the Law Offices of Banks and Johnson, LLC, alleges and states as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff Onya Whitner brings this action against Defendant Baltimore Symphony Orchestra, Inc. ("BSO") for violations of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. Ms. Whitner asserts a claim for interference with her right to restoration following approved FMLA leave (Count I) and a claim for retaliation for exercising rights protected by the FMLA (Count II).

2. BSO employed Ms. Whitner as its Senior Director of Human Resources. In the spring of 2026, Ms. Whitner submitted a request for FMLA leave to BSO to care for a family member with a serious health condition. After reviewing her submission, BSO approved the request and formally designated twelve weeks of leave as FMLA-protected. While Ms. Whitner remained on protected leave, she sent BSO a confidential, expressly non-binding communication proposing that the parties explore a negotiated separation. Five days later, on July 28, 2026, she confirmed in writing that her leave would end August 3 and that her return date was August 4. On July 31, while she was still on approved leave, BSO characterized the earlier settlement

proposal as a voluntary resignation "effective July 23, 2026" and treated her employment as ended rather than restoring her at the conclusion of leave. As a direct result of BSO's refusal to restore her, Ms. Whitner has suffered and continues to suffer lost wages, salary, employment benefits, and other compensation.

## JURISDICTION

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2), because this is a civil action arising under the FMLA, a law of the United States.

## VENUE

4. Venue is proper in this district under 28 U.S.C. § 1391(b)(1), because Defendant BSO resides in this district, and under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## PARTIES

5. Plaintiff Onya Whitner is a natural person residing at 1502 N. Caroline Street, Baltimore, Maryland 21213, in Baltimore City.

6. Ms. Whitner is an "eligible employee" as defined by the FMLA, 29 U.S.C. § 2611(2). She was employed by BSO as its Senior Director of Human Resources in Baltimore, Maryland, until BSO treated her employment as ended in July 2026.

7. Upon information and belief, Defendant Baltimore Symphony Orchestra, Inc. is a Maryland nonprofit corporation with its principal place of business at 1212 Cathedral Street, Baltimore, Maryland 21201, in Baltimore City. BSO is an "employer" as defined by the FMLA, 29 U.S.C. § 2611(4).

## FACTS

8. BSO employed Ms. Whitner as its Senior Director of Human Resources for more than twelve months prior to the commencement of her FMLA leave.

9. In the twelve-month period immediately preceding her FMLA leave, Ms. Whitner worked for BSO on a full-time basis and performed more than 1,250 hours of service.

10. Upon information and belief, at all relevant times BSO employed fifty or more employees for each working day during each of twenty or more calendar workweeks, and employed fifty or more employees within a seventy-five-mile radius of Ms. Whitner's worksite.

11. In or about the spring of 2026, Ms. Whitner submitted a request for FMLA leave to BSO to care for a family member with a serious health condition.

12. Ms. Whitner notified BSO leadership that she needed to begin leave. At BSO's request, she extended her last working day and prepared a comprehensive written transition document identifying open projects, outstanding tasks, key contacts, and other information necessary to facilitate coverage during her absence.

13. On May 8, 2026, after reviewing Ms. Whitner's submission, BSO approved her request and formally designated the leave as FMLA-protected by issuing a completed U.S. Department of Labor Form WH-382, Designation Notice. A true and correct copy of the Designation Notice is attached as Exhibit A and incorporated herein by reference.

14. BSO approved twelve weeks of FMLA leave beginning May 12, 2026.

15. Ms. Whitner commenced the approved FMLA leave on May 12, 2026.

16. In accordance with the arrangements made before her leave, Ms. Whitner's accrued paid leave was applied to the initial portion of her leave, with the remainder of her approved FMLA leave to be unpaid.

17. Before Ms. Whitner's leave began, BSO leadership agreed that Ms. Whitner would be relieved of her work responsibilities during leave, that staff would be asked not to email her, and that leadership would rely on her written transition document rather than contact her for clarification during her leave.

18. During her leave, Ms. Whitner made clear that she would not monitor her work email or perform work. On June 8, 2026, BSO's Chief Financial Officer acknowledged in writing that Ms. Whitner was "on FML" and had stated that she "weren't going to be monitoring [her] work email."

19. On or about July 23, 2026, while she remained on approved FMLA leave, Ms. Whitner sent BSO leadership a communication captioned "CONFIDENTIAL COMMUNICATION FOR SETTLEMENT PURPOSES ONLY." Although the communication stated that she believed it was in the parties' best interest to "part ways," it did so in the context of proposing negotiated terms and inviting further discussion concerning a mutually agreeable separation agreement. A true and correct copy of that communication is attached as Exhibit B and incorporated herein by reference.

20. That communication was expressly non-binding. It stated that it was "intended as a settlement proposal and a good-faith opening basis for negotiation," that it "does not constitute a binding agreement between the parties," and that "[a]ny resolution of this matter will be documented in a separate, formal Settlement Agreement, to be negotiated and executed by both parties."

21. The communication set out proposed terms for a negotiated separation, including six months of salary continuation, payment of earned wages and accrued benefits, a neutral

employment reference, mutual non-disparagement provisions, and an agreement that BSO would not object to unemployment compensation.

22. Ms. Whitner did not submit an unconditional resignation. The July 23 communication did not state "I resign," did not provide a last day worked or an effective resignation date, and did not state that her employment would end regardless of whether BSO accepted the proposed terms. Instead, she proposed, subject to negotiation and a future written agreement, terms on which the parties might voluntarily part ways. No separation agreement was ever negotiated or executed.

23. On July 28, 2026, after sending the July 23 proposal and before her leave concluded, Ms. Whitner emailed BSO's Chief Financial Officer confirming that the correct end date of her leave was August 3, 2026, "with a return date of August 4th." A true and correct copy of that email is attached as Exhibit C and incorporated herein by reference.

24. On July 31, 2026, BSO responded in writing. Rather than treat Ms. Whitner's communication as the non-binding settlement overture it was, BSO stated: "BSO accepts your resignation, effective July 23, 2026."

25. Ms. Whitner never submitted a resignation. BSO's Termination of Employment Policy provides that a voluntary resignation "must be submitted in writing by the employee or documented by the supervisor," and further requires documentation of the employee's last day worked, effective date of resignation, and reason for resignation. The supervisor-documentation alternative presupposes an actual resignation to document; it does not permit BSO to create a resignation by unilaterally characterizing a non-binding settlement proposal as one. Ms. Whitner submitted no resignation, and her July 23 communication did not identify a last day worked or an effective date of resignation.

26. At no time did BSO invoke or follow its Job Abandonment Policy, which requires written notice to the employee and an opportunity to respond before an absence may be treated as a voluntary resignation. Ms. Whitner was not absent without authorization; she was on approved FMLA leave with a confirmed return date of August 4, 2026.

27. Despite Ms. Whitner's July 28 written confirmation that she would return on August 4, and despite the absence of an unconditional resignation or executed separation agreement, BSO did not restore Ms. Whitner to her position, or to any equivalent position, on or after August 4, 2026. Instead, BSO treated her employment as ended as of July 23, 2026, while she was still on protected leave.

**COUNT ONE**

**Interference in Violation of the Family and Medical Leave Act**
**29 U.S.C. § 2615(a)(1)**

28. Ms. Whitner repeats and realleges paragraphs 1 through 27 above as if fully set forth herein.

29. At all relevant times, BSO was an employer covered by the FMLA, 29 U.S.C. § 2611(4), because it was engaged in commerce or an industry affecting commerce and employed fifty or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year.

30. At all relevant times, Ms. Whitner was an eligible employee under the FMLA, 29 U.S.C. § 2611(2), because she had been employed by BSO for at least twelve months and for at least 1,250 hours of service during the twelve-month period preceding her leave, at a worksite where BSO employed fifty or more employees within seventy-five miles.

31. BSO approved and designated Ms. Whitner's leave as FMLA-protected, and Ms. Whitner was entitled to the restoration rights afforded by the FMLA at the conclusion of that approved leave.

32. Upon her return from FMLA leave, Ms. Whitner was entitled under 29 U.S.C. § 2614(a)(1) to be restored to the position of employment she held when her leave commenced, or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment.

33. Ms. Whitner remained ready, willing, and able to return to work and confirmed in writing, before her leave ended, that she would return on August 4, 2026. Absent BSO's unilateral treatment of the non-binding settlement proposal as a resignation, Ms. Whitner would have returned to and retained her position, or an equivalent one.

34. BSO interfered with, restrained, and denied the exercise of Ms. Whitner's rights under the FMLA, in violation of 29 U.S.C. § 2615(a)(1), by refusing to restore her to her position or an equivalent position at the conclusion of her leave and by instead treating her employment as terminated.

35. BSO further denied Ms. Whitner the benefit of restoration by treating her confidential, expressly non-binding settlement overture as a voluntary resignation and, on that basis, declining to restore her to her position or an equivalent position at the conclusion of her approved leave.

36. BSO's interference with Ms. Whitner's restoration rights does not require proof of discriminatory intent or motive. Ms. Whitner was entitled to restoration under the FMLA, BSO denied that benefit, and the denial caused her harm.

37. As a direct and proximate result of BSO's interference with her FMLA rights, Ms. Whitner has suffered and continues to suffer damages, including lost wages, salary, employment benefits, and other compensation, together with interest, and is entitled to liquidated damages, equitable relief, and attorneys' fees and costs as provided by 29 U.S.C. § 2617(a).

## COUNT TWO

### Retaliation for Exercising Rights Under the Family and Medical Leave Act
### 29 U.S.C. § 2615(a); 29 C.F.R. § 825.220(c)

38. Ms. Whitner repeats and realleges paragraphs 1 through 37 above as if fully set forth herein.

39. Ms. Whitner exercised rights protected by the FMLA when she took approved FMLA leave beginning May 12, 2026, declined to monitor her work email or perform work during protected leave, and confirmed her intention to return to work at the conclusion of that leave.

40. Ms. Whitner was qualified for her position and had performed her job duties effectively prior to the events complained of herein.

41. BSO took an adverse employment action against Ms. Whitner when it treated her employment as terminated effective July 23, 2026, and refused to restore her to her position or an equivalent position at the conclusion of her leave.

42. BSO's decision to treat Ms. Whitner's employment as ended occurred while she was on FMLA leave and immediately before her scheduled return to work, in close temporal proximity to her exercise of FMLA rights.

43. Upon information and belief, the close temporal proximity between Ms. Whitner's exercise of FMLA rights, her scheduled return from leave, and BSO's decision to treat her

employment as ended supports a causal connection between her protected activity and the adverse employment action.

44. BSO's conduct constitutes unlawful discrimination and retaliation against Ms. Whitner for exercising rights protected by the FMLA, in violation of 29 U.S.C. § 2615(a) and 29 C.F.R. § 825.220(c).

45. As a direct and proximate result of BSO's retaliation, Ms. Whitner has suffered and continues to suffer damages, including lost wages, salary, employment benefits, and other compensation, together with interest, and is entitled to liquidated damages, equitable relief, and attorneys' fees and costs as provided by 29 U.S.C. § 2617(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Onya Whitner respectfully requests that this Court enter judgment in her favor and against Defendant Baltimore Symphony Orchestra, Inc. as follows:

**A.** Awarding Plaintiff back pay, including lost wages, salary, employment benefits, and other compensation lost by reason of Defendant's violations of the FMLA, together with interest calculated at the prevailing rate, pursuant to 29 U.S.C. § 2617(a)(1)(A)(i)-(ii);

**B.** Awarding Plaintiff liquidated damages equal to the sum of the damages and interest awarded under paragraph A, pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

**C.** Awarding Plaintiff appropriate equitable relief, including reinstatement or, in the alternative, front pay and the value of lost benefits, pursuant to 29 U.S.C. § 2617(a)(1)(B);

**D.** Awarding Plaintiff her reasonable attorneys' fees, reasonable expert witness fees, and the costs of this action, pursuant to 29 U.S.C. § 2617(a)(3); and

**E.** Granting Plaintiff such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: November 11, 2026
Baltimore, Maryland

Respectfully submitted,
**LAW OFFICES OF BANKS AND JOHNSON, LLC**

/s/ Cyrus C. Johnson
Cyrus C. Johnson, Esq.
U.S. District Court for the District of Maryland
Bar ID 32658
45 Warrenton Road
Baltimore, Maryland 21210
(443) 470-5471
cyrus@banksjohnson.com

Attorney for Plaintiff Onya Whitner